number 21-50276 and Mr. Cherhart, you have five minutes reserved for rebuttal, but you can open with 15 minutes. Yes, certainly, come on up. Good morning. May it please the court. I'm Scott Cherhart. I'm here on behalf of Mayor Edward Trevino, former police chief John Seamans, and Special Detective Wyatt Wright, City of Washington. I'm here to speak on a qualified immunity case, and we're up on a denial of qualified immunity based on a 12B6 motion. Since the adoption of the 14th Amendment, where the 4th Amendment was applied to the states, we've told officers, investigate your crime, take your findings to a judge, and get a warrant, get an independent evaluation of whether there's probable cause, and ask the judge to issue a warrant for an arrest. That's exactly what happened in this case. Let me set the table just a little bit, and it's just perhaps my confusion or my concern. We're here on an interlocutory appeal. The only issue that can be appealed is qualified immunity. A lot of the briefing seems to be on the NIBES, if that's how it's pronounced, N-I-E-B-E-S exception, and on the intermediary defense. Under qualified immunity, it's a two-pronged test. One, and this is a 12B6 dismissal, one was a violation of statutory or constitutional law adequately pled, and two, if so, was the conduct by the public official unreasonable under existing law. I'm just a little bit, it seems like instead you're raising three issues instead of just the qualified immunity issue. I could be wrong. It may be the first two about the exceptions have to do with prong one of qualified immunity. Just clarify that for me. Qualified immunity is what got us here. It's our vehicle to be able to appeal this. I'm going to put on my glasses if you don't mind, Your Honor. You need to speak more loudly. I apologize, Your Honor. Qualified immunity was a vehicle to get us to this courtroom, but fair notice is the issue that is important. That's my point. Fair notice might be an issue at trial, but qualified immunity is the only basis we can consider here. That's correct. And that's the two-pronged test, and so I'm just trying to understand, are you saying these other points have to do with prong one or prong two? I just don't understand where you are in this case. That's perhaps my fault, probably is. Qualified immunity does have two prongs. Was there a violation of the person's rights? In this case, we say that there wasn't. But the fair notice comes in under prong two, because it has to be something that a reasonable officer would know. All right, well, now you've clarified it for me. So you agree that all we're considering is qualified immunity, and these other aspects are just bolstering your claim that he's entitled to qualified immunity. That's correct. Your brief appeared to be that we're here on three separate—you're appealing three separate issues. Okay, go ahead. The fair notice provision is the important part. All right. In order to get to that, the appellee has to show that there's a case that told Edward Carino, the mayor, that he couldn't report a crime that he saw committed. Counsel, why is this case not completely controlled by the 2018 decision in Lozman? Which case? The 2018 Supreme Court decision in Lozman. What conceivable basis could Mayor Trevino and anybody else in the city have, after reading the Supreme Court's decision in Lozman, to say, we're going to go arrest—I mean, in Lozman, it was a member of the public participating at a city council meeting. Here, it's an alder woman. And in some ways, it's even clearer than Lozman, because at least the city of Riviera In Lozman, though, as I recall, the mayor or an alderman—I don't recall which—directed that the person be arrested for his speech. In this particular case, there's no connection between the speech and the arrest. I'm so glad you brought that up, because I was just rereading Justice Kennedy's opinion this morning, and, one, that's not what happens in Lozman, because the mayor just says—says there's no connection whatsoever to the speech. He says, that's disorderly conduct. You're violating the rules of procedure. Please stop. Stop. And when he didn't, he was arrested for disorderly conduct. But in this case, in some ways, the warrant application makes it easier than Lozman, because it literally says it's for the speech. I'm looking at the—this is Mayor Trevino's testimony to the arresting officer, who then submits this to the district judge. Defendant Gonzalez, until July 9, 2019, was serving as an alder woman for the city of Russell Hills. From her very first meeting in May of 2019, she, along with another alder woman, has been openly antagonistic to the city manager, Ryan—and I won't even try to pronounce the surname—wanting desperately to get him fired. Part of her plan to oust the city manager involved collecting signatures on several petitions to that effect. What conceivable basis of her petitioning activity could possibly—what conceivable relevance is that to the warrant application? The relevance of that is not to hide it from the judge who issued the warrant. To tell the judge the context in which this case came to be. To give the judge full information. If the speech—is her petition—I mean, it's clearly controlled by the petition clause of the First Amendment, right? No question. The activity in presenting the petition or arguing or complaining about the city council or the city administrator is clearly protected by the First Amendment. And Lozman tells you that. Lozman—this is, again, page 12 of Justice Kennedy's opinion. As a final matter, it must be underscored that this Court has recognized the right to petition as one of the most precious of the liberties safeguarded by the Bill of Rights. So anyone in the city of Castle Hills would know in 2018—that is, a year before the protected conduct in this case, which I understand you agree with me, it's protected conduct—you cannot go after somebody for petitioning the government. And then in the warrant application, it literally leads off with, we're unhappy about the fact that this older woman was petitioning the government because she didn't like the city manager. That's not exactly what it is. What it is is the investigating officer telling the judge everything he knows about this case so the judge can make an independent determination of whether there is probable cause for the arrest. And Lozman tells us that it doesn't matter, right? Lozman tells us the existence of probable cause does not defeat the 1983 claim, right? In those facts. Under these facts, though, what we have is presenting the petition is First Amendment speech. Stealing public documents and secreting them is not. And how exactly did she—I've read this warrant application, I don't know how many times—so she had it in her stack. So if I reached over and I touched Judge Englehart's stack of papers, your view is that I've committed a Class A misdemeanor if we were in Texas under Texas law? But we were in Texas and the document is an official government document. Those are official government documents. And you took that document and then you looked through it, make sure that you knew what it was, and you stuck it in your folder. So we both have copies of your briefs right here on the dais. We both have copies of them. And if I, for whatever—they're both red. I'm sorry, yours are blue, but they're the same color. And if I accidentally picked up Judge Englehart's blue brief and I put it in my stack of briefs, your view, in the City of Castle Hills view, is that I've committed a Class A misdemeanor under Texas law? No, not at all. Not at all. Remember, this document is a singular document that was turned in. As soon as the petition is given to the city, it becomes a public document of the City of Castle Hills, which was the reason why the city secretary wanted to find out where that had gone. When she took it, she looked through it, according to the video that's told us in the affidavit, that's all we have, shuffled through it, and then put it in her folder. It wasn't just the mayor that found it in her folder. The lieutenant that was on the scene found it in her folder. And then she handed it back. So, like, how long was it in her folder? After she was confronted by the police officer. And that's a Class A misdemeanor under Texas law? Class A misdemeanor to secrete or take any public document in an effort to get rid of it. I'm sorry, what was her effort to get rid of it? Why would she, it was her petition. I've never understood this about this case. Why would she take her own petition to, as you put it, get rid of it? I have information that's not in the record. Well, let's not do that then. So I don't want to go there. But Detective Wright determined, in his probable cause affidavit, that she was concerned about her investigation into the signatures in the document. And what would be the basis of that concern? Like, why would he think that that was her concern? Because he had already interviewed the person, one of the witnesses that stood up at the city council meeting who said that she had been presented that document, that petition, under false pretenses. Can I ask you a slightly different question? I'm concerned about this Nieves case. What do you think Ms. Gonzalez would have to show, in addition to what she did, to prove under Nieves that this is like the Chief Justice's jaywalking hypothetical? Like, what additional thing, other than the fact that there are 200 of these indictments, nobody ever gets thrown in jail for a night, none of these cases look anything like this case, what additional thing, in addition to what she actually alleged, would she have to show to come within the Nieves exception? Well, we go back to the Nieves case. The Nieves case talked specifically about jaywalking, and that places where jaywalking is endemic. What she would have to show is that stealing government documents was endemic, and that's never been shown. No, what the Chief Justice says is that you have to show that there is some discriminant — basically, you're treating her differently than you would treat other people who allegedly violate this government documents provision. And she has extensive allegations in her complaint about the fact that this is nothing — she's basically in a class of one, that this is nothing like all of the other government document cases. And so my question is, if that's not sufficient to trigger the Nieves exception, what additional thing would she have to allege? Looking at felony cases — this wasn't a felony case — doesn't tell us that this particular thing that she did was endemic. And what we have here is she's not a class of one. She says in her petition, in her complaint, that when she was running for office, she heard that the city manager had accused his secretary of stealing documents. Same offense. And that she was detained by the police. So she's not a class of one. Do you have any understanding of how many times Bexar County, Texas, put somebody in this offense for violating this provision? I have no idea. But I don't know that there's a whole lot of people that are arrested for stealing government documents. Let me ask you this way. What would be the conceivable justification for the way the city of Castle Hills — just give me some conceivable justification for why they would circumvent all of the normal law enforcement procedures, using the special investigator, not consulting the district attorney, not issuing the summons, walking the warrant application. Like, there are extensive allegations in the complaint of all of these irregularities. What conceivable justification would there be for doing it that way? These are allegations that are unsupported by any factual statements. Well, one, it's in the complaint, so we have to take it as true. They're certainly not conclusory. They're very specific. They're very specific. But can she really complain about going to jail when she took herself to jail and not to a satellite office? Well, she turned herself in once the warrant issued. Is that her fault? I understand. And that is an arrest. But she voluntarily went to the jail. It wasn't something where she was picked up by the sheriff's department and taken to one of the satellite offices, if that's the procedure. Do you think she should have waited to have someone come put her in cuffs in front of her family? I don't know what she should have done, but I know what she did do. The reason for putting a special detective on here is in the first, in the opening part of the arrest affidavit, where Detective Wright explains that he gets brought in for things that are sensitive, issues where either the subject matter or the individual is sensitive. And as far as walking a warrant, that happens all the time by police officers. The allegation is that lawyers are hired as special prosecutors and they don't walk warrants. But police officers certainly do every day of the week. Why wouldn't you do it that way here? Hire him as a special prosecutor? You couldn't because there's a district attorney in Bexar County. No, what I'm asking is why not use a normal police officer, the district attorney, and the normal warrant application process? Why all of this over a thing where she allegedly for a few minutes had a piece of paper in the wrong sack? This is the normal process. You wouldn't want a sworn officer that's on the street every day to be subject to the wrath of a city council member, a sitting city council member. So you bring in your special investigator so they can investigate it. It's just like police shootings. We bring in the... Is your allegation that the district attorney of Bexar County would be intimidated by the population of 5,000? Is that the... Of course not. Okay, so why not use the district attorney? Because this was detective Wright's investigation and this was the procedure that he went down.  At any rate, Knaves can't possibly... The Crockport erred in using Knaves to say that the mayor violated her rights. There's no animus like is exhibited in Knaves where the officer whispers in the guy's ear, said, I love the facts of this case, bet you wish you'd have talked to me now. There's nothing like that. And I see my time has expired. Thank you. You have five minutes for rebuttal. Ms. Bidwell. May it please the court. I'm Anya Bidwell representing plaintiff here, Ms. Sylvia Gonzalez. Your honors, this case is exactly like Lausman, right? There are specifically five ways in which this case is like Lausman. First, there was a conduct that involved more actions than just a simple arrest, just like in Lausman. Second, this was not a split-second decision type of a situation. Before we get to that, don't we have to consider this case against the qualified immunity as to each of the defendants in this case individually? Your honor, case law in this circuit does not require that. What the case law in this circuit says is that every individual defendant's conduct must be considered separately, as the district court judge did, but you can have a common analysis, just like in Villarreal, the decision that was issued two days ago, where this circuit also analyzed the conduct while considering all the actions separately, like in Good v. Bagot, for example. You actually then can have a common analysis, especially at this motion-to-dismiss stage. And your claim is, correct me if I'm wrong, limited to the arrest, the retaliatory arrest, is that correct? Yes, your honor. We're not talking about all of the other acts. The complaint reflects conspiratorial acts and agreements to do things and whatnot, but the focus of the case, the actual tortious conduct for 1983 purposes, is the arrest. Absolutely, your honor. And nothing else. It's just like Lausman, right? All the other things that we're talking about are showing the retaliatory motive, and how probable cause by itself can't explain why Ms. Gonzalez was arrested. And one other question, I guess our preliminary, which you just touched on, you can see that in this case there was probable cause on the face of the application? What we are saying, your honor, is that even if there were probable cause, she could— I understand. Yes. But are you agreeing that there was probable cause, even though you're saying it doesn't matter? Are you agreeing that on the face of the application for the warrant there was probable cause? Your honor, just like in Villarreal, probable cause— I'm talking about Neves, so let's switch to Neves. Yes, you're talking about Neves. Where are we on the Neves spectrum? Are we on the no probable cause side or on the probable cause side? We are on probable cause side in that Ms. Gonzalez does not have to overcome and basically show that there was no probable cause. Yes, your honors. And just like I said, this case is exactly like Lozman, right? Importantly, you have all this other conduct taking place over a period of time. You also have a no split-second situation, right? In Neves, that was really important because when officers act in split-second situations and when they also have to take speech into account, like in Neves, there was a legitimate reason to take speech into account, then probable cause serves as a useful proxy. But in this case, there is no need to take split-second—to make split-second decision situation. There is a third way in which we are like Lozman in that there is plenty of objective evidence to show that probable cause was not the motivating factor, but retaliatory animus was the motivating factor. And number four, again, just like your honor mentioned, in the affidavit, they're actually specifically showing Ms. Gonzalez's speech as a reason for the charge. And, you know, with theft, there is really no need to take speech into account whatsoever, and they are improperly taking speech into account. And fifth, of course, just like in Lozman, we're talking about political speech, we're talking about the right to criticize the government, which is, you know, very important and very high on the hierarchy. Why are the defendants Trevino and Siemens not unlike the—why are they not covered under Hartman? And Lozman discusses Hartman. Why are they not covered under the Hartman rationale? Yes, your honor. A Hartman rationale is much more similar to Neves in that you actually have a one-time type of an interaction, right, and it's really hard in Hartman to be able to untangle probable cause and an improper motive. But in this situation, we are like Lozman and not like Hartman because you have all this other evidence happening over a long period of time that can actually be provided and can be shown as a reason why Ms. Gonzalez was arrested rather than just probable cause itself. And, you know, as you mentioned, in Hartman, you just don't have that type of a situation. You have a one-time interaction, just like in Neves. And, your honor, speaking of Neves, we fit very much within the exception to the exception, right? Neves itself is an exception to Mount Healthy, and the exception in Neves where Justice Roberts specifically talks about this difficulty in split-second decision making where you need to untangle probable cause from the improper motive. But as Justice Roberts and Justice Gorsuch in his concurrence both say, it is when you actually have all this other objective evidence that helps you to untangle the two, then you should be able to proceed on your claim. And — Was there any other comparative evidence offered at this stage, any comparative evidence about how others were treated? We provide 10 years' worth of data, including misdemeanor affidavits as well as felony indictments, where we show that the only type of things that are being used — that individuals are being charged under these statutes for are things like legally binding documents, for example, green cards, social security numbers, driver's licenses, nothing even remotely similar to what happened with Ms. Gonzales. And importantly, too, it's not just the charge that's the problem, and we present evidence there, it's a problem that the arrest itself, right? Like your owner said, there was no need whatsoever for Ms. Gonzales ending up in jail. Bayer County jails are overcrowded. An individual like Ms. Gonzales with no criminal record being charged for to be in jail. Yet, Defendant Wright, he circumvented the district attorney to ensure that it wouldn't just be summons, that it wouldn't just be processing through a courtroom, that it would actually be jailed. Is there a requirement that they go through the district attorney in making the application for the warrant? Your Honor, in situations involving nonviolent misdemeanors like this one, we essentially — the district attorney is the proper way to do this. You say it's a proper way. Is there any authority that says it must be done that way? No. No, there is no authority. It's just there are, in certain circumstances, you can actually walk the warrant directly to a judge. And is that what happened in this case? Yes, that's exactly what happened. The district attorney was circumvented twice, actually. You say circumvented, but I just understood you to say that it could be walked directly through to the magistrate — That's right. — by the investigating officer? Yes, Your Honor. So there was no requirement, and this may be neither here nor there for purposes of the claims, but there's no requirement that the investigating officer bring the case to someone in the district attorney's office before applying for a warrant, particularly in a misdemeanor case? That's correct. Okay. Yes, and for these reasons, Your Honor, as you talked about, the qualified immunity test, right? So what we have here and what we alleged in the complaint is that, A, there is a constitutional violation — there's a constitutional right, in fact, a right to not be retaliated against when you criticize your government, and that this right is clearly established. It is clearly established that even if there is probable cause for an arrest in circumstances like these ones, both under Nieves and under Lozman, an individual should be able to proceed with the First Amendment claim. Counsel, can I ask you about Justice Sotomayor's dissent in Nieves? So she says that the rule, this jaywalking exception to the exception, as you put it, requires you to allege not just that this is retaliatory and discriminatory and this is not the way that the statute is normally applied to people, but also the absence of prosecutions as to people, like my hypothetical with your friend on the other side, where if I take Judge Inglehart's blue brief and put it in my stack and I'm not prosecuted, effectively the dog that doesn't bark. What do you make of her dissent and how do we understand the jaywalking exception in light of it? Your Honor, I think Justice Gorsuch addresses her dissent, right? And that's why he says that I interpret the rule in Nieves as to be — you know, it needs to be looked at commonsensically, not just is there an exact exception to jaywalking, right? So the concern in Nieves is that in a split-second type of a situation, it is impossible to untangle probable cause from an improper motive. And what Nieves itself says, in those cases, probable cause prohibits you from First Amendment retaliation, but in cases where you can show that probable cause was actually not the reason, then you should be able to proceed. And so Justice Gorsuch says this exception needs to be interpreted commonsensically and not narrowly. Otherwise, if it is interpreted narrowly, then it swallows the rule. And, of course, we don't even need Nieves to, you know, prevail here because Lozman itself clearly establishes a violation of a constitutional right. This situation is exactly like Lozman. And I want to briefly, I guess, address the arguments on the other side. For example, the independent intermediary doctrine, and we talked a little bit about that before, but it really doesn't apply here because the argument is given that probable cause does not — the argument here is even if there is probable cause, she can still proceed on her First Amendment retaliation claim. So any of the cases that they cite, like McLean, like Shaw, they are, first of all, dealing with Fourth Amendment in terms of IID, independent intermediary doctrine, but also they're simply beside the point here. And also briefly to address the Villarreal case that came out two days ago, Judge Ho specifically zooms in on this very important distinction between split-second decision-making and situations like here where there is a period of time where this takes place. And qualified immunity, not just so probable cause exception has this specific, you know, split-second decision type of a situation to it all by itself, right? But if we zoom out into a broader qualified immunity test, you also see in cases like Villarreal, in cases like this one, the heart of the matter is the fair warning test as outlined in Hope v. Peltzer. And Lozman and Nieves provided defendants here with plenty of fair warning to know that what they were doing was unconstitutional. So let me back up a little bit. There's no allegation — correct me if I'm wrong — there's no allegation that any of the information in the application was false. Is that correct? No. There is no allegation. That there was no corrupt statement in the application or a lie in the application, misrepresentation that the magistrate would have relied upon in issuing the warrant, right? That's correct. Okay. And then the other thing is that, to be clear, there's no allegation that the magistrate or whoever the individual is that was responsible for the warrant was himself or herself corrupt or ill-motivated or part of the team of conspirators, so to speak, in issuing the warrant. Is that correct? That's absolutely correct. Okay. And unless there are no further questions, we respectfully ask this Court to affirm the order denying qualified immunity to the individual defendants. Thanks very much. Thank you, counsel. All right. Mr. Cherthart, you have five minutes for rebuttal. May it please the Court. This case isn't anything like Villarreal, where you have a patently unconstitutional state statute that allows you to arrest a reporter for asking questions. I can't believe that that's still on the books. This isn't like Villarreal, where the testimony was that they never used this particular statute before. According to plaintiff's pleadings, while she was running for office, she learned it had been used on the city secretary. This just is nothing like Villarreal. The evidence, all this mountain of evidence, look at the timeline. I'd invite you to look at the timeline. We're talking about 2019. On May 22, Apelli is accused of stealing the petition. On June 18, it was assigned to Wyatt Wright. On July 17, a warrant was issued. We've got this big colored document with all of this stuff that's supposed to lay out the plan that we're going to follow that doesn't get published until July 17. There's no allegation that the mayor, that the police chief, or that Detective Wright even knew that this was going to be published. The timeline doesn't work. It's not a part of some grand conspiracy. It's a report of a crime, the assignment of an investigation, the investigation where the officer did everything we'd expect him to do. He interviewed all the proper witnesses, attempted to interview Apelli, but she wouldn't talk to him. Looked at the videotape evidence and took it to a judge to get a warrant. That's what we have, and it's not intended to violate anybody's rights at all. With that, we'd ask you to reverse and remand this case. Thank you, counsel. Thank you all for your arguments in this case and for your briefing. The matter will be deemed submitted, and with this case, the oral arguments for this panel are concluded. The court will be in recess.